TIMOTHY J. GORRY  (SBN 143797)
*tgorry@mrllp.com*
JON-JAMISON HILL  (SBN 203959)
*jhill@mrllp.com*
JANE M. KUTEPOVA  (SBN 305254)
*jkutepova@mrllp.com*
**MICHELMAN & ROBINSON, LLP**
10880 Wilshire Boulevard, 19th Floor
Los Angeles, CA 90024
Tel:  (310) 299-5500
Fax: (310) 299-5600

Attorneys for Douglas B. Croxall
and Natasha Allas Croxall

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DOUGLAS B. CROXALL, individually and as co-trustee of The Croxall Family Revocable Trust Dated February 20, 2004; and NATASHA ALLAS CROXALL, individually and as co-trustee of The Croxall Family Revocable Trust Dated February 20, 2004, | Case No.:  2:23-cv-01884-GW-RAO Related to Case No.: 2:23-cv-00606-GW Assigned to Hon. George H. Wu |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COUNTERCLAIMS FILED BY M2B FUNDING CORP. AND ODIN ASSOCIATES, LLC PURSUANT TO FED. R. CIV. P. 12(B)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| v. | |
| M2B FUNDING CORPORATION, a Florida corporation; ODIN ASSOCIATES, LLC, a Florida limited liability company, and DOES 1 through 10, inclusive, | Date:   August 7, 2023 Time:   8:30 a.m. Place:   Courtroom 9D |
| Defendants, | [Declaration of Timothy J. Gorry and [Proposed] Order filed concurrently] |
| AND RELATED COUNTERCLAIMS | Action Filed:  November 18, 2022 Removed:  March 14, 2023 Trial Date:  None Set |

## **NOTICE**

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE that on August 7, 2023 at 8:30 a.m., or as soon thereafter as this motion may be heard in Courtroom 9D of the above-entitled court located 50 West 1st Street, Los Angeles, California, Douglas B. Croxall and Natasha Allas Croxall (the "***Croxalls***") will and hereby do move to dismiss the First Amended Counterclaims, and each count contained therein, brought by M2B Funding Corp. ("***M2B***") and Odin Associates, LLC ("***Odin***" and collectively with M2B, "***Defendants***") on June 5, 2023 [Dkt. 28] pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis that each of the counterclaims brought by Defendants fails to state a valid claim upon which relief can be granted. In addition, because Defendants cannot correct the inherent and fatal defects in the First Amended Counterclaims, the Croxalls ask that the Court dismiss each of them without leave to amend.

The Croxalls' motion shall be based upon this Notice, the attached Memorandum of Points and Authorities in Support, the accompanying Declaration of Timothy J. Gorry, any reply papers filed by the Croxalls, the pleadings filed with this Court, and such other evidence, oral or documentary, and argument as may be presented at or before the hearing.

In compliance with Central Dist. L.R. 7-3, on June 19, 2023, the Croxalls' counsel met and conferred with Defendants' counsel about the substance of the contemplated motion and any potential resolution. [Decl. of Timothy J. Gorry, ¶¶3-4].

Dated: June 26, 2023

**MICHELMAN & ROBINSON, LLP**

By: _____/s/ *Timothy J. Gorry*_____
Timothy J. Gorry
Jon-Jamison Hill
Jane M. Kutepova
Attorneys for Defendants Douglas B.
Croxall and Natasha Allas Croxall

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ........................................................................................... 7

II.  RELEVANT BACKGROUND ..................................................................... 8

III.  LEGAL ARGUMENT .................................................................................. 10

   A.  The Title Transfer Document Is, as a Matter of Law, a Mortgage. ........ 11

   B.  Recording the Title Transfer Document Was Not an Effective Means of Transferring Any Ownership or Possessory Interest in the Residence to Lenders. .............................................................................. 16

   C.  Lenders' Attempts to Advance Claims Based on Allegations that They Have an Ownership or Possessory Interest in the Residence Fail as a Matter of Law. ............................................................................ 17

   D.  Lenders Cannot Amend Their Claims to State Viable Causes of Action, as the Problems with the Process Lenders Used to Record the Title Transfer Document Cannot Be Cured. ................................... 18

   E.  Lenders Cannot Maintain Their Claims for Tortious Interference and Slander *Per Se*, Because the Alleged Communications Are Protected by California's Litigation Privilege. ....................................................... 18

IV.  CONCLUSION ............................................................................................ 21

**CROXALLS' MOTION TO DISMISS DEFENDANTS' FIRST AMENDED COUNTERCLAIMS**

**Case No. 2:23-cv-01884-GW**

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Akhtar v. Mesa*,
   698 F.3d 1202 (9th Cir. 2012) ................................................................. 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................. 11

*Balistreri v. Pacifica Police Dept.*,
   901 F.2d 696 (9th Cir. 1988) ............................................................... 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................. 11

*Bly–Magee v. California*,
   236 F.3d 1014 (9th Cir.2001) .............................................................. 11

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) .............................................................. 8, 10

*Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*,
   525 F. Supp. 3d 1145 (S.D. Cal. 2021) ............................................... 19

*hiQ Labs, Inc. v. LinkedIn Corporation*,
   --- F. Supp. 3d ----, 2022 WL 18399982 (N.D. Cal. Nov. 4, 2022) ....... 19

*Moore v. Kayport Package Exp., Inc.*
   885 F.2d 531 (9th Cir. 1989) ............................................................... 11

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ............................................................... 10

**CALIFORNIA CASES**

*Alliance Mortgage Co. v. Rothwell*,
   10 Cal. 4th 1226 (1995) ...................................................................... 16

*Banc of Am. Leasing & Capital, Inc. v. 3 Arch Trustee Services, Inc.*,
   180 Cal. App. 4th 1090 (2009) ...................................................... 16, 17

*Coppola v. Superior Court*,
   211 Cal. App. 3d 848 (1989) ............................................................... 17

*Falcon v. Long Beach Genetics, Inc.*,
  224 Cal. App. 4th 1263 (2014) ....................................................................... 19

*Finton Construction, Inc. v. Bidna & Keys, APLC*,
  238 Cal. App. 4th 200 (2015) ......................................................................... 19

*Flickinger v. Finwall*,
  85 Cal. App. 5th 822 (2022) ........................................................................... 19

*People ex rel. Gallegos v. Pacific Lumber Co.*,
  158 Cal. App. 4th 950 (2008) ......................................................................... 19

*Jensen v. Friedman*,
  79 Cal. App. 2d 494 (1947) ......................................................... 13, 14, 15, 16

*Kenne v. Stennis*,
  230 Cal. App. 4th 953 (2014). Application of the ......................................... 19

*Lewis v. Superior Court*,
  30 Cal. App. 1850 (1994) ............................................................................... 20

*Mallard v. Progressive Choice Ins. Co.*,
  188 Cal. App. 4th 531 (2010) ................................................................... 19, 20

*Rossberg v. Bank of America, N.A.*,
  219 Cal.App.4th 1481 (2013) ......................................................................... 12

*Secrest v. Security National Mortgage Loan Trust
  2002-2*, 167 Cal.App.4th 544 (2008) ............................................................ 12

*Sterman v. Ziem*,
  17 Cal. App. 2d 414 (1936) ............................................................................ 13

*Stromerson v. Averill*,
  39 Cal. App. 2d 118 (1940) ............................................................................ 13

*Teater v. Good Hope Dev. Corp.*,
  14 Cal. 2d 196 (1939) ..................................................................................... 13

*Wang v. Heck*,
  203 Cal. App. 4th 677 (2012) ................................................................... 19, 20

**CROXALLS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS**                                    **Case No. 2:23-cv-01884-GW**

CALIFORNIA STATUTES

California Civil Code

§ 47 ............................................................................................................ 18

§ 1971 ....................................................................................................... 12

§ 2924 ......................................................................................... 13, 14, 16

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6) ................................................ 10

CROXALLS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS                    Case No. 2:23-cv-01884-GW

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

M2B Funding Corp. ("**M2B**") and Odin Associates, LLC ("**Odin**," and collectively with M2B, "**Lenders**") are sophisticated, albeit predatory, lenders that saw an opportunity to try to bypass longstanding legal restrictions and enter into an unenforceable agreement with Douglas and Natasha Croxall (the "**Croxalls**").  When the Croxalls were not able to timely pay off a loan, Lenders agreed to provide the Croxalls (who were unrepresented at the time) with an additional 60-days in which to repay them.  In return, Lenders had the Croxalls execute a "Title Transfer Document"[1] for Lenders to hold as additional security for the loan.  A couple of months later, and without following any required statutory foreclosure procedures or other judicial processes, Lenders recorded the Title Transfer Document and attempted to eject the Croxalls and their children from their home.  Fortunately for the Croxalls, California law bars Lenders from taking these sorts of rapacious actions.

The Croxalls initiated the related lawsuit to resolve the title dispute caused by Lenders' recordation of the Title Transfer Document, to quiet title to their residence and to remedy other impacts of Lenders' illegal acts.[2]  Undeterred, Lenders filed their own action, and after this Court granted motions to dismiss with leave to amend, they filed their First Amended Counterclaims in this action, as well as an substantively identical Second Amended Complaint in the related action, alleging claims that range from ejectment of the Croxalls from their home to common law slander.

---

[1]  The actual title of the document is "Grant Deed."  [First Amended Counterclaims ("**FAC**"), Ex. E, Dkt. 28-5, p. 10].  Lenders label it a "Title Transfer Document" in their pleading, but also refer to it as the Grant Deed or by other names.  [*E.g.*, FAC, Dkt. 28, ¶33 (calling it a "deed-in-lieu of foreclosure")].  For consistency and to avoid confusion, the Croxalls will adopt "Title Transfer Document" label.

[2]  The Croxalls initiated litigation in Los Angeles Superior Court, through a case styled as *Croxall v. M2B Funding Corp.*, Case No. 22SMCV02369.  Lenders removed the lawsuit to this Court.  [Dkt. 1].  Lenders then filed their original Counterclaims.  [Dkt. 13].

**CROXALLS' MOTION TO DISMISS DEFENDANTS' FIRST AMENDED COUNTERCLAIMS**                    **Case No. 2:23-cv-01884-GW**

1   In these amended pleadings, the unifying theme running through the various
2   claims has not changed from the previous iterations of Lenders' pleadings.  Each of
3   Lenders' claims depend entirely on the validity of the Title Transfer Document and
4   Lenders' contention that they took ownership and possessory rights to the Croxalls'
5   residence the moment Lenders recorded the Title Transfer Document.  However, the
6   claims readily disclose that Lenders took the "Title Transfer Document" as security for
7   a loan, making it a mortgage under California law.  Lenders' remedy was to utilize a
8   proper foreclosure process to liquidate their security interest, not to simply record the
9   Title Transfer Document and then attempt to sell the property out from under the
10  Croxalls.  Indeed, the California Legislature created exacting and strict nonjudicial
11  foreclosure processes to prevent the very type of predatory acts that these sophisticated
12  Lenders engaged in here.  For these reasons, each claim fails as a matter of law, and
13  each must be dismissed.  The Croxalls respectfully ask that the Court grant this Motion
14  in its entirety and dismiss Lenders' claims without leave to amend.

15  ## II.   **RELEVANT BACKGROUND**

16  The core facts that Lenders rely upon for their claims have not changed from
17  their original Counterclaims to the FAC.[3]  In 2021, the Croxalls purchased their current
18  family home located at 229 Oceano Drive, Los Angeles, California (the "***Residence***").
19  [FAC, Dkt. No. 28, ¶19].  The Croxalls borrowed money from Lenders to purchase the
20  Residence, and Lenders secured the loan for the Residence with a traditional
21  Promissory Note and Deed of Trust arrangement.  [FAC, Dkt. No. 28, ¶¶22-23].  The
22  Croxalls were not able to timely pay the amounts owed under the terms of the
23  Promissory Note.  [FAC, Dkt. No. 28, ¶¶27-28].

24

25  ───────────────
26  [3]  The Croxalls do not admit Lenders' allegations and characterizations, many of which
    are false and incorrect.  However, for purposes of this Motion, the Croxalls rely upon,
27  as they must, the pleadings factual allegations.  *See Cahill v. Liberty Mut. Ins. Co.*, 80
    F.3d 336, 337-38 (9th Cir. 1996) (recognizing that for a motion to dismiss, "[a]ll
28  allegations of material fact are taken as true and construed in the light most favorable
    to the nonmoving party").

**CROXALLS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS**          **Case No. 2:23-cv-01884-GW**

1    Pursuant to an agreement for additional time to pay, which Lenders refer to at

2    various times in the FAC as the "holding agreement," "the grant-in-lieu of foreclosure

3    arrangement" and/or the "July 20, 2022 Written Confirmation of Agreement" (FAC,

4    Dkt. 28, ¶34), the parties entered into a contract with the following terms:

5        1. The Croxalls were to immediately execute a grant deed (a.k.a. Title Transfer

6           Document) in favor of Lenders;

7        2.  The Croxalls were to immediately "courier[] to [Lenders' attorney's] LA office"

8           the Title Transfer Document;

9        3. Lender's attorney was to hold the Title Transfer Document until "repayment of

10          the loan that's secured by the Deed of Trust" or 60 days, whichever is earlier;

11       4. "If the loan [was] not repaid at the end of the 60-day period," then Lenders would

12          be entitled to record the Title Transfer Document using the "same procedure as

13          the recordation of the Deed of Trust some months ago."

14   [FAC, Ex. C, Dkt. 28-3, p. 2].[4]    The "July 20, 2022 Written Confirmation of

15   Agreement" is an email from Lenders' attorney to Douglas Croxall.  [*Id.*].  It is not

16   signed by anyone.  [*Id.*]   The Croxalls, at the time they allegedly entered into the

17   agreement, did not have legal representation.  [*Id.*].

18       The Croxalls executed the Title Transfer Document on or about July 21, 2022,

19   and sent it to Lenders' attorney.  [FAC, Dkt. 28, ¶35].  The Croxalls failed to repay the

20   loan during the 60-day period, triggering a default under the agreement.  [FAC, Dkt. 28,

21   ¶36].  Lenders recorded the Title Transfer Document (or had a vendor record it) with

22   the Los Angeles County Recorder.  [FAC, Dkt. 28, ¶36].  Lenders then brought their

23   legal claims against the Croxalls.

24

25   _____

26   [4]  Lenders characterize the terms of this arrangement in the allegations of the FAC.
     [*E.g.*, FAC, Dkt. 28, ¶33].  For accuracy, the Croxalls reference the text of the exhibit
27   Lenders allege is the definitive writing that establishes the substance of the parties'
     agreement.  *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (recognizing
28   that the Court must consider "exhibits attached to the complaint" when analyzing the
     merits of a motion to dismiss).

**CROXALLS' MOTION TO DISMISS DEFENDANTS'**
**FIRST AMENDED COUNTERCLAIMS**                          **Case No. 2:23-cv-01884-GW**

1     The claims in Lenders' FAC are all based on the validity of the Title Transfer

2  Document.  The First Claim for Relief, Ejectment, is based on the fact that the "Tile

3  Transfer Document . . . establishes [Lenders] as the lawful owner of the Oceano

4  Property." [FAC, Dkt. 28, ¶58].  The Second Claim for Relief, a Declaratory Judgment

5  cause of action, is based on the allegation that the "Tile Transfer Document . . .

6  establishes [Lenders] as the lawful owner of the Oceano Property."  [FAC, Dkt. 28,

7  ¶67].  The Third Claim for Relief, another Declaratory Judgment cause of action, is

8  similarly based on the contention that the Lenders "complied with . . . the Title Transfer

9  Document." [FAC, Dkt. 28, ¶71].  The Fourth Claim for Relief, labeled Tortious

10  Interference with Contractual Relations, is necessarily based on the fact that Lenders

11  had ownership rights pursuant to the Title Transfer Document in order for the realtor

12  Lenders engaged to have the right to market the Residence on Lenders' behalf. [FAC,

13  Dkt. 28, ¶¶45-46, 73].  The Fifth Claim for Relief, Slander *Per Se*, is based on the

14  premise that the Croxalls' made false statements that the Lenders did not own the

15  Residence and were wrongfully attempting to sell the Residence. [FAC, Dkt. 28, ¶¶45-

16  46, 79-81].  Finally, the Sixth Claim for Relief, Breach of Contract, expressly relies on

17  the "the terms, conditions and promises set forth in the" Title Transfer Document.

18  [FAC, Dkt. 28, ¶¶85, 87].

19  **III.  <u>LEGAL ARGUMENT</u>**

20     Federal Rule of Civil Procedure 12(b)(6) provides this Court with authority to

21  dismiss any claim that fails to state a claim upon which relief can be granted.

22  Rule 12(b)(6) effectively tests the legal sufficiency of the claims asserted in the

23  complaint. *See Navarro v. Block*, 250 F.3d 729, 731 (9th Cir. 2001).  "Dismissal can

24  be based on the lack of a cognizable legal theory or the absence of sufficient facts

25  alleged under a cognizable legal theory." *See Balistreri v. Pacifica Police Dept.*, 901

26  F.2d 696, 699 (9th Cir. 1988) (citation omitted).

27     The Court provisionally accepts the pleading's factual allegations. *See Cahill v.*

28  *Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  However, the Court need

**CROXALLS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS**                    **Case No. 2:23-cv-01884-GW**

1   not accept "legal conclusions" as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

2   Lenders have an obligation to provide the grounds for their entitlement to relief, which

3   requires them to "offer more than labels and conclusions, and a formulaic recitation of

4   the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550

5   U.S. 544, 555 (2007) (citation omitted).

6       When a court determines a claim fails to state a valid cause of action, the court

7   must decide whether to allow the pleader leave to amend.  "[L]eave to amend should

8   be granted unless the district court determines that the pleading could not possibly be

9   cured by the allegation of other facts." *Bly–Magee v. California,* 236 F.3d 1014, 1019

10  (9th Cir.2001) (internal quotation marks omitted).  "In deciding whether justice

11  requires granting leave to amend, factors to be considered include the presence or

12  absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies

13  by previous amendments, undue prejudice to the opposing party and futility of the

14  proposed amendment." *Moore v. Kayport Package Exp., Inc.* (9th Cir. 1989) 885 F.2d

15  531, 538 (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962); *DCD Programs, Ltd. v.*

16  *Leighton,* 833 F.2d 183, 186 (9th Cir. 1987)).

17      Here, and as discussed in detail below, the FAC establishes, conclusively, that

18  Lenders' claims, all of which are premised on the contention that Lenders gained valid

19  title to the Residence and a possessory interest in the property the "Title Transfer

20  Document," fail as a matter of law.  They must be dismissed, and because amendment

21  would be futile, there is no reason to provide Lenders with yet another attempt to amend

22  their FAC, or for that matter, the identical claims Lenders pled in the related action.

23  **A.    The Title Transfer Document Is, as a Matter of Law, a Mortgage.**

24      According to Lenders, the Title Transfer Document is the product of an express

25  agreement between the parties evidenced by a July 20, 2022 Written Confirmation of

26  Agreement ("***July Confirmation***").   [FAC, Dkt. 28, ¶¶33-34; *see also* FAC, Ex. C,

27  Dkt. 28-3, p. 2].   The July Confirmation allegedly dictates the circumstances upon

28  which Lenders could record the Title Transfer Document.  For that reason, it provides

**CROXALLS' MOTION TO DISMISS DEFENDANTS'**
**FIRST AMENDED COUNTERCLAIMS**                    **Case No. 2:23-cv-01884-GW**

1    the key facts to determine the true nature of the Title Transfer Document.

2    It should not go unnoticed that the contract Lenders contend was memorialized

3    through the July Confirmation itself contravenes California law.  California Code of

4    Civil Procedure section 1971 provides that no

5    interest in real property . . . nor any power over or concerning it, or in
     any manner relating thereto, can be created, granted, assigned,
6    surrendered, or declared, otherwise than by operation of law, or a
     conveyance or other instrument in writing, subscribed by the party
7    creating, granting, assigning, surrendering, or declaring same . . ..

8    The "writing" that purportedly embodies the agreement, an email from Lenders' own

9    attorney to Douglas Croxall,[5] fails meet the necessary criteria for a written contract

10   agreeing to transfer an interest in the Residence to Lenders, and it is unenforceable.[6]

11   This is, no doubt, why Lenders wanted to take possession, either directly or through an

12   intermediary, immediately and hold the Title Transfer Document during the 60-day

13   loan repayment period.  Lenders' lack of care in reducing the parties' agreement to

14   writing highlights how the Lenders routinely attempted to take the easiest path to their

15   ultimate goal in seizing the Croxalls' Residence, even if that path meant circumventing

16   well-settled California law.

17   Putting aside any statute of frauds violation, the July Confirmation conclusively

18   demonstrates that the Title Transfer Document is, in fact, a mortgage under California

19   law.  Here, the Croxalls executed and turned the Title Transfer Document over to

20

21   [5]  Natasha Croxall was not a listed recipient on the email.  The FAC does not allege
     that there is any writing through which they confirmed the "contract" with her.
22   [FAC, Ex. C, Dkt. 28-3, p. 2].

23   [6]  Had Lenders tried to characterize the deal confirmed by the July Confirmation as an
     amendment to the earlier loan documentation or deed of trust, that too would have
24   contravened the statute of frauds.  "An agreement to modify a contract that is subject
     to the statute of frauds is also subject to the statute of frauds."  *Secrest v. Security*
25   *National Mortgage Loan Trust 2002-2*, 167 Cal.App.4th 544, 553 (2008).  The earlier
     promissory note and deed of trust were themselves subject to the statute of frauds.
26   *See, e.g., Rossberg v. Bank of America, N.A.*, 219 Cal.App.4th 1481, 1503 (2013)
     [recognizing that the type of document that falls within the purview of the statute of
27   frauds "includes a promissory note and a deed of trust securing performance under
     the note"].
28

**CROXALLS' MOTION TO DISMISS DEFENDANTS'**
**FIRST AMENDED COUNTERCLAIMS**                              **Case No. 2:23-cv-01884-GW**

Lenders counsel. [FAC, Dkt. 28, ¶35]. There was then a 60-day holdback period, where the Croxalls and Lenders agreed that the Croxalls would have an additional two months to repay the loan. [FAC, Dkt. 28, ¶¶33-34; *see also* FAC, Ex. C, Dkt. 28-3, p. 2]. That extended holdback period is a determinative fact here. That fact alone proves that the parties intended to remain in a lender-borrower relationship for a set period, making the Title Transfer Document a mortgage.

The definition of what constitutes a mortgage is codified as California Civil Code section 2924 ("***Section 2924***"). The statute broadly provides that "[e]very transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage." California law concerning the nature of mortgages has held steady for more than a century. "It is the general rule that where the purpose and effect of the transaction is to create a lien on specific property as security for the payment of a debt it constitutes a mortgage, irrespective of the language used by the parties." *Teater v. Good Hope Dev. Corp.*, 14 Cal. 2d 196, 209 (1939) (citing *Ferguson v. Murphy*, 117 Cal. 134, 138-39 (1897)); *see also Stromerson v. Averill*, 39 Cal. App. 2d 118, 123 (1940) (holding quit claim deed delivered as security against the purchase of a farm must be considered a mortgage despite its label). The California Supreme Court has long held that ***"[e]ven though the parties agree to the contrary***, [] where the relation of the parties is that of debtor and creditor and the property is regarded as security for the payment of the debt, there is no transfer of title." *Teater*, 14 Cal. 2d at 209 (referencing *Sterman v. Ziem*, 17 Cal. App. 2d 414, 418-19 (1936), emphasis added).

*Jensen v. Friedman*, 79 Cal. App. 2d 494 (1947) ("***Jensen***"), explains the circumstances under which a deed must be considered a mortgage. In *Jensen*, the defendants had borrowed money from the plaintiff, and defendants had provided plaintiff with promissory notes and corresponding deeds of trust for a piece of real property defendants owned. *See id.* at 496. Defendants later entered into a separate agreement with plaintiff whereby defendants would deed the real property to a title

**CROXALLS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS**                                    **Case No. 2:23-cv-01884-GW**

insurance company which would hold the property for the account of plaintiff.  *See id.*
As part of that holding agreement, the plaintiff stated that it was "the intention of the
parties hereto that said property be held for the account of the said first parties until
such time as said first parties elect to sell said property."  *Id.*  At the plaintiff's request,
pursuant to this agreement and when defendants failed to repay the debt, the title
company ultimately deeded the property to plaintiff, which plaintiff then claimed he
owned. *See id.* at 497.  One of the defendants challenged ownership through the lawsuit
on the basis that the agreement the parties had made constituted a mortgage under
California law.

The *Jensen* court grappled with the question of whether the conveyance of real
property, although it facially appeared to be absolute in form, really was a mortgage
under Section 2924.  Ultimately, the court found it was.  There were certain key factors
the *Jensen* court analyzed.  First, the court considered whether the transfer was meant
to be absolute.  It recognized that "[p]laintiff testified that it was his understanding that
had the $10,750 note been paid off at any time prior to when he sold the property, he
would not have sold the property but would have returned it to the Friedmans." *Id.* at
499.  The *Jensen* court found that "[f]rom the testimony of plaintiff it is clear that the
conveyance of the title was not absolute, [and] that the Friedmans reserved an interest
in the property." *Id.*  It was that "right to redeem by paying the indebtedness" that
helped lead the court to the conclusion "that the deed was given only as security." *Id.*

Second, the *Jensen* court considered the nature of the relationship between the
parties between the time when defendants deeded the property to the middleman (in
that case, the title company) to hold and the time when title supposedly transferred to
the plaintiff.  The *Jensen* court recognized that "[t]he relationship of debtor and creditor
continued to exist after the execution of the deed."  *Id.* at 501.  The court concluded
that when a lender-borrower relationship continues, "[t]hat ***definitely*** proves it to be a
mortgage." *Id.* (emphasis added).

///

**CROXALLS' MOTION TO DISMISS DEFENDANTS'**
**FIRST AMENDED COUNTERCLAIMS**                                    **Case No. 2:23-cv-01884-GW**

1    Finally, the *Jensen* court, in response to an argument made by the plaintiff,

2    considered whether timing of the conveyance affected its nature. The court found that

3    the timing is irrelevant. More specifically, the court recognized that "[a] mortgage can

4    be given as security for a debt already due." *Id.* at 504.

5    The factors that caused the *Jensen* court to hold that the deed at issue there was

6    in fact a mortgage dictate, as a matter of law, that the Title Transfer Document that

7    Lenders base their claims on, despite being labeled a "Grant Deed," is a mortgage and

8    must be treated as such. First, Lenders make clear in their pleading, both in the text of

9    the allegations and through its exhibits, that the Title Transfer Document was not an

10    "absolute" deed. The parties agreed that Lenders' right to record the Title Transfer

11    Document was triggered only "[i]f the loan is not repaid at the end of the 60-day

12    period." [FAC, Ex. C, Dkt. 28-3, p. 2; *see also* FAC, Dkt. 28, ¶34 (the parties

13    "memorializ[ed] that, after the 60-day waiting period, if [the Croxalls] had not repaid

14    the 90-Day Promissory Note loan," Lenders could record the deed)[7]]. The conditional

15    nature of the Title Transfer Document demonstrates that the deed constituted security

16    for the loan, which is the key feature of a mortgage.[8]

17    Second, Lenders' pleading alleges that from the time the Croxalls executed the

18    Title Transfer Document until Lenders recorded the deed with the county recorder, the

19    parties remained in a lender-borrower relationship. Lenders readily concede that

20    throughout the duration of the 60-day period memorialized by the July Confirmation,

21    the Croxalls would work to repay Lenders' loan. In Lenders' words, "if the 90-Day

22    Promissory Note remained unpaid following the expiration of the 60-day period,

23    [Lenders] would then accept delivery . . . [and] record/file" the Title Transfer

---

[7]  Lenders may point to the relatively short holdback period on the Title Transfer Document (60 days) when arguing that it should not be deemed to be a mortgage, but the initial loan term was only 90 days, almost as much time as the loan repayment period associated with the Title Transfer Document.

[8]  That the Title Transfer Deed was held by Lenders' counsel and only deemed to be delivered once the 60 days ran does not factor into the analysis. The conveyance in *Jensen* was held by an intermediary, which did not change its true nature.

**CROXALLS' MOTION TO DISMISS DEFENDANTS'**
**FIRST AMENDED COUNTERCLAIMS**                    **Case No. 2:23-cv-01884-GW**

Document.  [FAC, Dkt. 28, ¶33; *see also* FAC, Ex. C, Dkt. 28-3, p. 2].  The existence of a continued lender-borrower relationship proves the Title Transfer Deed was a mortgage, and according to *Jensen*, "***definitely***" so.

Finally, the fact that the Croxalls were already in default on the loan at the time they executed the Title Transfer Document does not alter the conclusion that the Title Transfer Document is a mortgage.  Lenders concede that by virtue of the agreement confirmed by the July Confirmation, Lenders set a ***new*** condition of default that would trigger their right to record the deed.  More specifically, Lenders agreed that they could only record the document if the loan was not repaid within 60 days from the date the Croxalls executed the Title Transfer Document.  [FAC, Dkt. 28, ¶¶33-34; *see also* FAC, Ex. C, Dkt. 28-3, p. 2].  In this way, the FAC's allegations help show that the Title Transfer Document is a mortgage, and in any case, the timing of when the Croxalls executed the document does not affect the analysis here because "[a] mortgage can be given as security for a debt already due." *Jensen* at 504.

**B.**  **Recording the Title Transfer Document Was Not an Effective Means of Transferring Any Ownership or Possessory Interest in the Residence to Lenders.**

While the Lenders may be correct that the Croxalls have not complied with their obligations to comply with the repayment, the proper response by the Lenders cannot be to circumvent California's foreclosure laws and the public policy protections they provide by recording the Title Transfer Document.  In California, "there is only 'one form of action' for the recovery of any debt or the enforcement of any right secured by a mortgage . . .. That action is foreclosure, which may be either judicial or nonjudicial." *See Alliance Mortgage Co. v. Rothwell*, 10 Cal. 4th 1226, 1236 (1995).  California courts recognize that Section 2924 and related statutes provide a "comprehensive framework for the regulation of a nonjudicial foreclosure sale." *Banc of Am. Leasing & Capital, Inc. v. 3 Arch Trustee Services, Inc.*, 180 Cal. App. 4th 1090, 1096 (2009) (quoting *Melendrez v. D & I Investment, Inc.*, 127 Cal. App. 4th 1238, 1249-50

1   (2005)).  One purpose of the statutory scheme is "to protect the debtor/trustor from

2   wrongful loss of the property."  *Banc of Am. Leasing*, 180 Cal. App. 4th at 1096.

3   Another purpose is to ensure that any sale of the property is conducted properly.  *See*

4   *id.*  An important aspect of the statutory process, and one which furthers the statute's

5   various purposes, is that as the foreclosure procedure unfolds, the debtor "is given

6   several opportunities to cure the default and avoid the loss of property." *Banc of Am.*

7   *Leasing*, 180 Cal. App. 4th at 1097.  Lenders attempts to record the Title Transfer

8   Document circumvented these protections.

9        Lenders do not allege in the FAC or elsewhere that they complied with any of

10  the requirements of California's statutory nonjudicial foreclosure scheme.

11  Furthermore, Lenders do not contend that they complied with any judicial foreclosure

12  process.  Simply put, Lenders' action in recording the Title Transfer Document was

13  not done in compliance with applicable California law.  Lenders' failure to adhere to

14  the law is important to evaluating the validity of the claims they assert in the FAC.

15      **C.**   **Lenders' Attempts to Advance Claims Based on Allegations that**

16           **They Have an Ownership or Possessory Interest in the Residence**

17           **Fail as a Matter of Law.**

18      Lenders' refusal to utilize any proper legal process to foreclose on their security

19  interest in the Residence and instead record the Title Transfer Document and remove

20  the Croxalls from their home, has a profound effect on Lenders' ability to properly

21  plead or maintain their FAC.  Lenders' failure to follow the statutory process for

22  nonjudicial foreclosure is fatal to Lenders' efforts to claim title, ownership or

23  possessory interest in the Residence.  *See, e.g., Coppola v. Superior Court*, 211 Cal.

24  App. 3d 848, 868 (1989) (recognizing that a nonjudicial foreclosure sale "must be

25  conducted in strict compliance with . . . applicable statutory law").

26      As discussed at length above in Section II of this Motion, each of Lenders'

27  claims is necessarily based on the theory that Lenders somehow obtained valid

28  ownership of and possessory interests in the Residence by recording the Title Transfer

17

Document.  They did not.  For that reason, Lenders have not pled any valid claim against the Croxalls in their FAC.  Moreover, after several attempts, Lenders still cannot show that there is any viable way for them to correct or augment their allegations to breathe life into any of the claims contained in the FAC.

### D. **Lenders Cannot Amend Their Claims to State Viable Causes of Action, as the Problems with the Process Lenders Used to Record the Title Transfer Document Cannot Be Cured.**

Lenders have repeatedly tried to state viable claims based on their ownership rights to the Residence that purportedly flow from the Title Transfer Document, both through their counterclaims in this lawsuit and their nearly identical complaints filed in the related litigation.  Though Lenders added allegations or changed the characterization of certain facts, the foundational facts for their claims have been consistent throughout each iteration of their pleadings.  Their claims are wholly reliant on the July Confirmation and the validity of the Title Transfer Document.  There is no conceivable way for Lenders to amend these core allegations, for example by omitting any mention of the 60-day period that definitely proves the Title Transfer Document to be a mortgage, that would provide a path for them to state a viable claim.  For that reason, the Court need not, yet again, allow them leave to amend their pleading.

### E. **Lenders Cannot Maintain Their Claims for Tortious Interference and Slander *Per Se*, Because the Alleged Communications Are Protected by California's Litigation Privilege.**

For independent reasons, Lenders cannot maintain their claims for Tortious Interference and Slander *Per Se*, as the allegations of the FAC disclose that they are based on statements and communications that are legally privileged.  California Civil Code section 47 provides that a "privileged publication or broadcast is one made: (a) In the proper discharge of an official duty. (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law."  That statute is

1  commonly referred to as the litigation privilege.

2        The litigation privilege is absolute and applies regardless of malice or the

3  motives of the speaker.  *See Flickinger v. Finwall*, 85 Cal. App. 5th 822, 840 (2022).

4  "The policy of encouraging free access to the courts is so important that California's

5  litigation privilege extends beyond claims of defamation to claims of interference with

6  contract and prospective economic advantage."  *Golden Eye Media USA, Inc. v. Trolley*

7  *Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1233 (S.D. Cal. 2021).  In fact, the litigation

8  privilege broadly bars all tort causes of action except a claim of malicious prosecution.

9  *See Kenne v. Stennis*, 230 Cal. App. 4th 953, 965 (2014).  Application of the litigation

10  privilege often starts with confirmation that the injury allegedly resulted from an act

11  that was communicative in its essential nature.  *See hiQ Labs, Inc. v. LinkedIn*

12  *Corporation,* --- F. Supp. 3d ----, 2022 WL 18399982, *12 (N.D. Cal. Nov. 4, 2022).

13        The scope of the litigation privilege is not limited to communications made at

14  trial or in proceedings, but often extends to steps taken prior to the initiation of a lawsuit

15  or afterwards.  *See Falcon v. Long Beach Genetics, Inc.*, 224 Cal. App. 4th 1263, 1272

16  (2014).  Communications that bear "some relation" to judicial proceedings are entitled

17  to immunity.  *Mallard v. Progressive Choice Ins. Co.*, 188 Cal. App. 4th 531, 543

18  (2010); *Wang v. Heck*, 203 Cal. App. 4th 677, 684 (2012).  Any doubt about whether

19  to apply the litigation privilege ***must*** be resolved in favor of its application.  *See Finton*

20  *Construction, Inc. v. Bidna & Keys, APLC*, 238 Cal. App. 4th 200, 212 (2015); *People*

21  *ex rel. Gallegos v. Pacific Lumber Co.*, 158 Cal. App. 4th 950, 963 (2008).

22        Here, Lenders' Tortious Interference (Count 4) and Slander (Count 5) claims

23  arise out of specific communications, including a November 22, 2022, letter from the

24  Croxalls' attorney to a realtor Lenders had engaged to sell the Residence.[9]  [FAC,

25  Dkt. 28, ¶¶47, 75, 79].  More specifically, Lenders allege that through the letter, the

26

27  [9]  The SAC's third count for Declaratory Judgment incorporates similar assertions,
namely that the Croxalls were not legally entitled to send the letter to the realtor
28  and/or record the *Lis Pendens*.

**CROXALLS' MOTION TO DISMISS DEFENDANTS'**
**FIRST AMENDED COUNTERCLAIMS**                    **Case No. 2:23-cv-01884-GW**

1  Croxalls "falsely and in bad faith represented that [Lenders] 'took steps to improperly
2  record a Grant Deed purporting to transfer title to the Property to them."  [FAC,
3  Dkt. 28, ¶48].  Lenders claim that because of those statements, their relationship with
4  a realtor was disrupted and the realtor refused to take any action to sell the Residence.
5  [FAC, Dkt. 28, ¶76].  Lenders also assert that the Croxalls, again through litigation
6  counsel, improperly filed and recorded a *Lis Pendens* that interfered with Lenders'
7  ability to sell the Residence.  [FAC, Dkt. 28, ¶49].  Finally, Lenders allege that the
8  Croxalls made false allegations and signed a "false verification" in connection with the
9  complaint the Croxalls filed with the Los Angeles Superior Court (which was later
10  removed to this Court).  [FAC, Dkt. 28, ¶¶52-53].

11  Each relevant communication was made in the context of litigation and is
12  privileged.  From the documents attached to the FAC, Lenders demonstrate that the
13  letter upon which they base their claims conveyed to the realtor that the Croxalls had
14  filed a lawsuit in Superior Court and recorded the *Lis Pendens*.  [FAC, Ex. F, Dkt. 28-
15  6, p. 2].  Indeed, copies of both the Croxalls' complaint and the *Lis Pendens* were
16  enclosed with the letter.  [FAC, Ex. F, Dkt. 28-6, pp. 3-56].  The letter necessarily bears
17  "some relation" to the judicial proceedings, as its plain purpose was to inform the
18  realtor of their existence, making it an absolutely privileged communication.  *See*
19  *Mallard*, 188 Cal. App. 4th at 543; *Wang*, 203 Cal. App. 4th at 684.

20  Next, there can be no question that the *Lis Pendens* was related to the litigation
21  the Croxalls had initiated.  The entire "purpose of a *lis pendens* [is] to preserve the
22  court's jurisdiction over property[, because] if a party to litigation were able to transfer
23  clear title during the litigation, the court would be unable to render an effective
24  judgment." *Lewis v. Superior Court*, 30 Cal. App. 1850, 1860 (1994).  For that reason,
25  the *Lis Pendens* is an absolutely privileged communication.

26  Finally, any "false" allegations the Croxalls made in the complaint they filed in
27  Superior Court must be covered by the litigation privilege and cannot form the basis
28  for tort claims.  So too must be any "false verification" appended to the complaint.

20

**CROXALLS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS**                          **Case No. 2:23-cv-01884-GW**

1    Simply put, none of these communications, all of which were made within

2    pleadings filed in a lawsuit or made for purposes of giving public notice of the lawsuit,

3    are absolutely privileged and cannot form the basis for "tortious interference" or

4    "slander" claims.    For that reason, Lenders' claims for Tortious Interference of

5    Contractual Relations and Slander *Per Se* must be dismissed.

6    **IV.    <u>CONCLUSION</u>**

7    While Lenders go to great lengths in the First Amended Counterclaims to try to

8    create a plausible explanation for their complete disregard of their legal obligation to

9    properly foreclose upon the Residence, they fall short.    The oral contract Lenders

10   purportedly forged with the Croxalls that Lenders that was confirmed by the "July 20,

11   2022 Written Confirmation of Agreement" conclusively demonstrates that the Title

12   Transfer Document is a mortgage.    The Lenders willfully ignored the legal processes

13   and procedures to properly foreclose on their security interest when they recorded the

14   Title Transfer Documents, and they cannot now advance claims wholly based on the

15   deed's validity.    The admissions Lenders make as part of the First Amended

16   Counterclaims bar the Lenders from maintaining each of the claims they include in

17   their pleading.  Furthermore, the Lenders' tort claims fail to state valid causes of action

18   under California law, as the communications that underlie those claims are absolutely

19   privileged.  For these reasons, the Croxalls respectfully ask the Court to grant their

20   Motion in its entirety, dismiss Lenders' First Amended Counterclaims and deny

21   Lenders leave to amend.

22

23   Dated:  June 26, 2023                    **MICHELMAN & ROBINSON, LLP**

24

25                                    By:    ___*/s/ Timothy J. Gorry*___

26                                           Timothy J. Gorry
                                             Jon-Jamison Hill
27                                           Jane M. Kutepova
                                             Attorneys for Defendants Douglas B.
28                                           Croxall and Natasha Allas Croxall

**CROXALLS' MOTION TO DISMISS DEFENDANTS'
FIRST AMENDED COUNTERCLAIMS**                              **Case No. 2:23-cv-01884-GW**

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2          Pursuant to Central District L.R. 11-6, the undersigned, counsel of record for

3   Defendants  Douglas  B.  Croxall  and  Natasha  Allas  Croxall,  certifies  that  the

4   memorandum  of  points  and  authorities  for  this  brief  contains  5,384  words,  which

5   complies with the word limit of L.R. 11-6.1.

6

7

8   Dated:  June 26, 2023                                      **MICHELMAN & ROBINSON, LLP**

9

10                                          By:  _____/s/ Timothy J. Gorry_____

11                                                  Timothy J. Gorry
                                                 Jon-Jamison Hill

12                                                  Attorneys for Defendants Douglas B.
                                                 Croxall and Natasha Allas Croxall

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CROXALLS' MOTION TO DISMISS DEFENDANTS'**
**FIRST AMENDED COUNTERCLAIMS**                                    **Case No. 2:23-cv-01884-GW**